UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| Elaine B. Davis-Molinia and Ralph A. Molinia, | VERIFIED COMPLAINT |
| Plaintiffs, | |
| -against- | 08 CIV 7584 |
| The Port Authority of New York and New Jersey, Robert Durando, Theresa Tesler, Olga Krueger, Victoria Cross Kelly and United Service Workers Union – International Union of Journeymen and Allied Trades, Local Union 111S, Port Authority Operations Supervisors Association, | Jury Demand |
| | JUDGE DANIELS |
| Defendants. | |

------------------------------------------------------------------X

## NATURE OF ACTION

1.  This case involves alleged racial discrimination, harassment, retaliation and hostile work environment.  It is brought by Elaine B. Davis-Molinia and Ralph A. Molinia, both citizen of the United States.  The Molinas charge that defendants, the Port Authority of New York and New Jersey, Robert Durando, Olga Krueger and Victoria Cross Kelly discriminated against them and created a hostile work environment with regard to the terms and condition of their employment in violation of Title VII of the Civil Rights Act of 1964, and Equal Pay Act.; and that the United Service Workers Union – International Union of Journeymen and Allied Trades, Local Union 11S, Port Authority Operations Supervisors Association discriminated against plaintiffs because of their race in violation of 42 U.S.C. § 1981, and denied them fair representation.

## JURISDICTION

2.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 (1 - 4), and the aforementioned statutory provisions.

1

## THE PARTIES

3. Plaintiff Elaine B. Davis-Molinia is and was at all times material hereto an African American citizen of the United States and an employee of the Port Authority of New York and New Jersey (hereinafter the PA), and is currently a general patron service supervisor (FS-7) at the George Washington Bridge, (hereinafter GWB).

4. Plaintiff Ralph A. Molinia is and was at all time material hereto is a White citizen of the United States and an employee of the PA, and is currently a duty manager of construction and special operations (FS-7) at the GWB.

5. Upon information and belief, defendant the PA, is an interstate compact entered into by New York and New Jersey in 1921 and approved by Congress of the United States as a government agency as required by the Constitution of the United States.

6. Upon information and belief, that at all times material hereto, the defendant, the PA, its agents, servants and employees operated, maintained and controlled the GWB, including employees thereof.

7. Upon information and belief, defendant Robert Durango is and was at all times material hereto an employee of the PA as the general manager at the GWB.

8. Upon information and belief, defendant Theresa Tesler was at all times material hereto an employee of the PA and was the operations manager at the GWB.

9. Upon information and belief, defendant Olga Krueger is and was at all times material hereto an employee of the PA and was the supervisor of bridge operations at the GWB.

10. Upon information and belief, defendant Victoria Cross Kelly is and was at all times material hereto an employee of the PA as director of tunnels bridges and terminals department.

11.     Upon information and belief, defendant PA Operations Supervisors Association is and was at all times material hereto is the union for the PA FS supervisors, and is affiliated with United Service Workers Union – International Union of Journeymen and Allied Trades, Local Union 11S

**BACKGROUND**

12.     Upon information and belief, on January 1, 2003, all PA FS staff became unionized under defendants the PA Operations Supervisors Association; however, upon information and belief, the union books were not issued to all FS staff until June of 2006.

13.     Upon information and belief, plaintiff Elaine B. Davis-Molinia began her employment with the PA in August of 1977 as a toll collector, and had a series of promotions and is now a FS-7 supervisor since July of 1997, and she began working on the 2nd floor doing administrative work in the operations department at the GWB during December 2000 through December 2006, and she was the only black person working on that floor at which time her working hours were from Mon. – Fri. 6 a.m. to 2 p.m., plus overtime each week, and as of January 1, 2007, she was replaced from her job on the 2nd floor by James J. Kemble, a FS-7 and former chairman of the Union, to his job on the 1st floor, which caused her working hours to change to a rotating 12-hour shift, including weekends plus some overtime after 12 hours.

14.     Upon information and belief, plaintiff Ralph A. Molinia became a FS-7 in 1984 at the GWB and commenced working on the 1st floor on a rotating 12-hour shift, including weekends, and subsequently in August of 1997 he commenced working on the 2nd floor, and his working hours were from Mon. – Fri. 6 a.m. to 2 p.m., plus overtime each week up until October 5, 2007, then his working hours were changed to 8 a.m. to 4 p.m., plus overtime, and then on January 1, 2008, he was back to his former hours, 6 a.m. to 2 p.m. plus overtime each week, and his office was next door to plaintiff Elaine B Davis-Molinia's office when she commenced working on the 2nd floor in year 2000,.

15. Upon information and belief, defendant Robert Durando, came to the GWB in 2003, as the general manager, and would exclude plaintiff Elaine B. Davis-Molinia from all staff meetings and communications with his office but would have the secretaries to inform her of what was said at the meetings that involved her directly; however, plaintiff Ralph A. Molinia would always be treated fairly by defendants Durando, Tesler and Krueger.

16   Upon information and belief, there was never a problem at the job for plaintiffs to car pool from their homes in to work together, leave work at the same time (even on overtime), or ask for time off and plan vacations together through years 2000 and 2005.

## AND FOR A FIRST CAUSE OF ACTION

17. The matters set forth in paragraph 1 through 16 are hereby repeated.

18. Upon information and belief, in June of, 2005, when both plaintiffs returned to work from a vacation that they had taken together, they informed defendants Durando, Tesler and Krueger that they now intended to marry, and immediately thereafter, upon information and belief, defendant Tesler gave plaintiffs a look of disapproval, and then defendant Tesler started deliberately excluding Mr. Molinia from attending meeting concerning construction, security and electronics at the GWB which is part of his job.

19. Upon information and belief, on December 30, 2005, the plaintiffs got married to each other, and subsequently announced their marriage to the staff on the 2nd floor at the GWB; then the working environment dramatically changed towards them, and during this time, plaintiff Ralph A. Molinia was no longer treated fairly by defendants Durando, Tesler and Krueger.

20. Upon information and belief, defendants started harassing plaintiff, Mr. Molinia by taking away his ability to make decisions relating to construction and security

4

at the GWB, and by denying plaintiff's requests for time off to handle his personal outside appointment, defendants eventually brought him up on disciplinary charges for misuse of PA's vehicle, insubordination and abusive language, and for continuing to request early leave from work.

21.  Upon information and belief, both plaintiffs were informed by defendants Durando, Tesler and Krueger that plaintiffs could no longer take off together, and that plaintiff could only take two-weeks vacation time together when they had more than two-weeks vacation time a year.

22.  Upon information and belief, defendant Durando was overheard by plaintiff Mrs. Molinia telling defendant Krueger, "I want you to get her out of here," (meaning the plaintiff, Mrs. Molinia.)

23.  Upon information and belief, on or about July 20, 2006, defendants Durando, Tesler, and Krueger, got defendant Victory Cross Kelly involved and had her to inform plaintiffs that plaintiffs were in violation of PA's regulation, AP 20-1.113, which prohibits relatives and spouses from supervising each other, and insisted that they violated the rule when in fact the defendants knew that plaintiffs jobs did not overlap with one another, nor did plaintiffs ever supervised the other.

24.  Yet, defendants Durando, Tesler, Krueger and Kelly, insisted that one of the plaintiffs, primarily Mrs. Molinia, had to be removed from her position on the 2nd floor and gave plaintiffs over the weekend to decide where Mrs. Molinia wanted to go.

25  Upon information and belief, there is another married couple who are supervisors at the GWB, and upon information and belief, but defendants have not charged them in violation of PA's regulation AP20-1.13b.

26.  Upon information and belief, as a result of the the defendants' actions plaintiff suffered a hostile work environment at the GWB, and as such, plaintiff Mrs.

Molinia filed a charge of discrimination with the New Jersey Division on Civil Rights on or about September 21, 2006.

27. Upon information and belief, plaintiffs refused to be removed from their jobs on the 2nd floor at the GWB and notified their union defendant Port Authority Operations Supervisors Association, whose attorney challenged defendants Durando, Tesler, Krueger and Kelly that they would be in violation of the contract agreement if one of the plaintiffs were to be removed under PA's regulation AP20.1.13b.

### AND FOR SECOND CAUSE OF ACTION

28. The matters set forth in paragraph 1 through 27 are hereby repeated.

29. Upon information and belief, in June of 2006, when plaintiffs received their union books, it was revealed that operations supervisors were to receive a shift differential premium at eight percent of their base salary between 4 p.m. and 8 a.m..

30. Upon information and belief, plaintiff Mrs. Molinia's regular shift hours at the GWB were from 6 a.m. to 2 p.m. from the time the contract went into effect which was January 1, 2003 through August 31, 2007, and she remained at those hours through December 31, 2006..

31. Upon information and belief plaintiff, Mr. Molinia's regular shift hours at the GWB were from 6 a.m. to 2 p.m. from the time the contract went into effect and he remained at those hours through October 5, 2007.

32. Upon information and belief, the plaintiffs made many requests to defendants the PA and Durando for the back pay pursuant to the union contract, but upon information and belief, defendant Durando would only laugh at the plaintiffs and refused to pay them the shift differential.

33. As a result to not pay plaintiffs, defendants Durandos, Tesler and Krueger retaliated against plaintiffs and created a hostile work environment by changing Mr. Molinia's regular shift hours to 8 a.m. to 4 p.m. on or about October 5, 2007, knowing

that it would cause problems for plaintiffs to come in to work together and leave to go home together, all because they were an interracially married couple.

34. Upon information and belief, all the other supervisors at the GWB were paid retroactively the shift differential premium by defendant PA, except the plaintiffs.

35. As a result, plaintiff Mr. Molinia filed a charge of discrimination with the New Jersey Division on Civil Rights on or about November 11, 2007, and plaintiff Mrs. Molinia filed an addendum to her formal charge with the New Jersey Division on Civil Rights.

36. Upon information and belief, defendant Krueger told plaintiff Mr. Molinia that the PA filed its response to plaintiff's discrimination charge that his hours were from 8 a.m. to 4 p.m., and Mr. Molinia told her that the sign –in sheets would reflect that his hours were from 6 a.m. to 2 p.m.; and that defendant Krueger told him, "We can change it in the computer."

37. Upon information and belief, both plaintiff were mailed a right to sue letter from U.S. Equal Employment Opportunity Commission on or about May 28, 2008.

**AND FOR A THIRD CAUSE OF ACTION**

38. The matters set forth in paragraph 1 through 35 are hereby repeated.

39. Upon information and belief, the FS-7s' supervisor jobs on the 2nd floor at the defendant PA's facilities: GWB, Aviation, Holland Tunnel, Lincoln Tunnel and Staten Island Bridges are to be taken back by the PA as nonunion jobs when a FS-7 retires on the 2nd floor and/or by a FS-7 retiring on the 1st floor, then a FS-7 on the 2nd floor moves down to the 1st floor position, which is a rotating 12 hour shift position.

40. Upon information and belief, when the FS-7s received their union books, it became revealed for the first time by defendant PA Operations Supervisors Association, Local Union 111S (hereinafter the Union) that supervisors with the most seniority were to be offered a line pick based on seniority at all the PA facilities

mentioned in the 39th paragraph above, as to which job they wanted, either on the 1st floor or 2nd floor.

41. Upon information and belief, defendants Durando and Krueger continued their insistence to have plaintiff Mrs. Molinia removed from her position on the 2nd floor at the GWB, which the defendant Union was aware of, and as a result, upon information and belief, defendant Krueger met several times with James Kemble, a former chairman of the Union and FS-7 on the 1st floor at the GWB, to see if he or any other FS7s on the 1st floor at the GWB with more seniority than Mrs. Molinia would utilize the line pick and take plaintiff's job on the 2nd floor.

42. Upon information and belief, the position on the 2nd floor that plaintiff Mrs. Molinia had involved administrative work for field operations, and the job on the 1st floor involved supervising the field operations at the GWB.

43. Upon information and belief, no one on the 1st floor in field operations wanted the position on the 2nd floor, so upon information and belief defendants Durando and Krueger on behalf of defendant the PA offered James Kemble a large sum of money, namely $42,000 when he retired if he would utilize the line pick and take Mrs. Molinia's job on the 2nd floor.

44. Upon information and belief, the defendant Union was aware of plaintiff's, Mrs. Molinia's charge of discrimination against defendants the PA, Durando, Tesler, Krueger and Cross who were tying to remove the plaintiff from the 2nd floor for an alleged violation of the PA's regulation AP20.1.13b.

45. Upon information and belief, the defendant Union was also aware of the alleged money offer from the defendant PA to its chairman at the GWB, and defendant the Union aided and abetted the arrangement to happen with its chairman James Kemble, whom the defendant Union knew that Mr. Kemble was not qualified to do the administrative work on the 2nd floor, but permitted it to happen to further the

discrimination by defendants PA, Durando, Tesler, Krueger and Cross against the plaintiff Mrs. Molinia in violation of 42 U.S.C. §1981.

46. Upon information and belief, Mr. Kemble did inform other FS7s of the money offer from defendant PA, and his acceptance thereto of Mrs. Molinia's position.

47. As a result, upon information and belief, on or about January 1, 2007, Mr. Kemble took the 2nd floor position that was held by Mrs. Molinia and she was forced to take the 1st floor position which has a rotating 12 hour shift which includes working on weekends.

48. Upon information and belief, when Mr. Kemble took the 2nd floor position on or about January 1, 2007, defendant PA changed plaintiff Mr. Molinia's shift hours back to 6 a.m. to 2 p.m. and commenced paying him the shift differential premium as of January 1, 2008, but not the retroactive pay owed to both plaintiffs.

49. Upon information and belief, after accepting the job on the 2nd floor at the GWB, Mr. Kemble went public within the PA by e-mail that he was not qualified for the position and subsequently retired .after only three months in the position.

### AND FOR A FOURTH CAUSE OF ACTION

50. The matters set forth in paragraph 1 through 49 are hereby repeated.

51. Upon information and belief, according to the Union's contract, the line picks were to be offered at all PA facilities concerning the positions of FS-7s on the 2nd in field operations, but the defendant Union only enforced it at the GWB.

52. Upon information and belief, Mathews DeSantos, a FS-7 on the 2nd floor at the Lincoln Tunnel performs the same job at that facility as plaintiff Mrs. Molinia did at the GWB, and FS-7 in field operations retired on the 1st floor, but defendant the Union has not removed Mr. DeSantos to the 1st floor position.

53. Upon information and belief, that such inaction by the defendant Union, demonstrates unfair representation by the defendant Union against plaintiff Mrs. Molinia.

### AND FOR A FIFTH CAUSE OF ACTION

54. The matters set forth in paragraph 1 through 53 are hereby repeated.

55. As a result of all defendants actions towards the plaintiffs, they both have suffered and continues to suffer emotional harm.

### AND FOR A SIXTH CAUSE OF ACTION

56. The matters set forth in paragraph 1 through 54 are hereby repeated.

57. Upon information and belief, defendant, the Union, failed to represent plaintiffs on their demands to the defendant PA for the retroactive shift differential premium, when other members of the Union that were similarly situated as plaintiffs received their retroactive shift differential premium.

58. Upon information and belief, that defendant the Union failed to represent plaintiffs on their shift differential premium demands from the PA aided and abetted the defendants PA, Durando, Tesler, Krueger and Kelly in their discrimination and retaliation against the plaintiffs.

WHEREFORE, plaintiffs Elaine B. Davis-Molinia and Ralph A. Molinia demands judgment against the defendants as follows:

    a)    on the first cause of action in the amount of $300,000.00 for each'

    b)    on the second cause of action in the amount of back pay owed for each;

    c)    on the third cause of action in the amount of $300.000.00 for each;

    d)    on the fourth cause of action in the amount of $300,000 for each,

    e)    on the fifth cause of action in the amount of $300,000 for each,

    f)    on the sixth cause of action in the amount of $300,000 for each,

    g)    attorney's fees;

    h)    costs and interest; jury demand;

    i)    and such other and further relief in law and equity the Court deems just.

Dated:     New York
           August 26, 2008

                                                  _____
                                                  Jaha C. Smith (JS1212)
                                                  Attorney for Plaintiffs
                                                  156-08 Riverside Drive, Suite 5D
                                                  New York, NY  10032
                                                  (646) 584-0479

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Elaine B. Davis-Molinia and Ralph A. Molinia,

                          Plaintiffs,

    -against-

The Port Authority of New York and New Jersey, Robert Durando, Theresa Tesler, Olga Krueger, Victoria Cross Kelly and United Service Workers Union – International Union of Journeymen and Allied Trades, Local Union 111S, Port Authority Operations Supervisors Association,

                          Defendants.

                            VERIFICATION

------------------------------------------------------------------------X

STATE OF NEW YORK    )
                                ) SS.:
COUNTY OF NEW YORK  )

      I, Elaine B. Davis-Molinia, being duly sworn, deposed, says:

      I am a named Plaintiff named in the above entitled action, and we have read the Verified Complaint and know the contents thereof.  That the Verified Complaint is true to our knowledge, except as to matters alleged on information and belief, and that as to those matters we believe it to be true.

                                                  _____

                                                  Elaine B. Davis-Molinia

Sworn to before me on this
     day of August, 2008

_____
Notary Public

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Elaine B. Davis-Molinia and Ralph A. Molinia,

                              Plaintiffs,

    -against-

The Port Authority of New York and New Jersey,
Robert Durando, Theresa Tesler, Olga Krueger,
Victoria Cross Kelly and United Service Workers
Union – International Union of Journeymen and
Allied Trades, Local Union 111S, Port Authority
Operations Supervisors Association,

                              Defendants.
------------------------------------------------------------------------X

VERIFICATION

STATE OF NEW YORK   )
                            ) SS.:
COUNTY OF NEW YORK )

      I, Ralph A. Molinia, being duly sworn, deposed, says:

      I am a named Plaintiff named in the above entitled action, and we have read the Verified Complaint and know the contents thereof.  That the Verified Complaint is true to our knowledge, except as to matters alleged on information and belief, and that as to those matters we believe it to be true.

                                                       _____
                                                         Ralph A. Molinia

Sworn to before me on this
    day of August, 2008

_____
Notary Public